UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPECIALITY MEDICAL
EQUIPMENT, INC.

             Plaintiff,                              Case No. 22-CV-12396

vs.                                            Paul D. Borman
                                                United States District Judge

UNITEDHEALTH GROUP, INC.,
UNITED HEALTHCARE SERVICES,
INC., UNITEDHEALTHCARE
INSURANCE COMPANY, and
UNITEDHEALTHCARE, INC.

             Defendants.
_____/

## OPINION AND ORDER DENYING PLAINITFF SPECIALITY MEDICAL EQUIPMENT, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 8)

Plaintiff Specialty Medical Equipment, Inc., a provider of durable medical equipment and other medical supplies, brings this action against Defendants, a group of health insurance companies, for Defendants' alleged refusal to process approximately 7,000 claims for healthcare items that Plaintiff provided to beneficiaries of health plans issued and administered by Defendants, pursuant to Defendants' alleged unilaterally imposed "prepayment review" process.

1

Now before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 8), asking the Court to enter an order enjoining Defendants from implementing prepayment review against certain claims submitted by Plaintiff and requiring "prompt, good-faith processing of claims." Defendants filed a Response in opposition to Plaintiff's motion (ECF No. 10), and Plaintiff filed a Reply (ECF No. 11). The Court held a hearing on Plaintiff's motion on Thursday, January 5, 2023, at which counsel for Plaintiff and Defendants appeared.

For the reasons set forth below, the Court DENIES Plaintiff's motion for temporary restraining order and preliminary injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Facts

Plaintiff Specialty Medical Equipment, Inc. is a licensed provider of durable medical equipment and other medical supplies (DME), including wheelchairs, oxygen concentrators, CPAP and BiPAP machines, continuous glucose monitors (CGMs) and supplies, TENS units, and nebulizers. (ECF No. 8-1, Affidavit of David Soblick (Soblick Aff.), ¶ 6.)

Defendants UnitedHealth Group Incorporated, UnitedHealthcare Services, Inc., UnitedHealthcare Insurance Company, and UnitedHealthcare, Inc. (collectively, "Defendants") are health insurance companies that insure and/or

2

administer various health benefit plans for various members and insureds. (ECF No. 10-3, Affidavit of Dieynaba Knox (Knox Aff.), ¶ 5.)

Plaintiff does not have a participating provider agreement with any of the Defendants related to the products or services at issue in this matter, and thus Plaintiff is an "out-of-network provider" of DME to Defendants' beneficiaries. (*Id.* ¶ 4.) (ECF No. 8-1, Soblick Aff. ¶ 9.) Plaintiff contends that it is common practice in the healthcare industry for health insurers to pay out-of-network providers for services provided to the insurers' health plan beneficiaries, although the health plans may limit coverage for certain health services to only in-network or specialty providers, and may place other conditions and limitations on such coverage. (ECF No. 8-1, Soblick Aff. ¶¶ 10, 13.) Plaintiff states that it therefore has a custom and practice of not providing services to "out-of-network" health plan beneficiaries until it has communicated with the health insurer and verified coverage and the insurer's willingness to pay for DME from Plaintiff. (*Id.* ¶¶ 14-16.) Plaintiff also, if required by the insurance plan, obtains prior authorization from the insurer, which, if issued, approves the provider to provide the service – in this case, for Plaintiff to provide the DME. (*Id.* ¶¶ 20-21.) According to Plaintiff, a prior authorization is "not a guarantee that the insurer will pay for the services authorized as there are a number of reasons why payment may still be denied under the terms of the health plan," but

3

it "does serve as a promise that the insurer will process the claim for the authorized service according to the beneficiary's health plan[.]" (*Id.* ¶¶ 22-23.)

Plaintiff alleges that it has, since 2016 and until April 2021, submitted claims to Defendants for DME provided to Defendants' plan beneficiaries, and that Defendants have timely processed and paid Plaintiff's claims. (ECF No 8-1, Soblick Aff. ¶¶ 12, 28) (ECF No. 3, Compl. ¶ 4.)

Plaintiff alleges that, starting in or about April 2021, Defendants stopped paying claims submitted for DME Plaintiff provided to Defendants' plan beneficiaries, and instead implemented prepayment review of all of Plaintiff's claims, demanding extensive medical records and other documentation and information as a precondition to adjudicating and paying any of Plaintiff's claims. (ECF No. 8-1, Soblick Aff. ¶¶ 29-30) (ECF No. 3, Compl. ¶ 5.) Plaintiff contends that Defendants are the only payor that has implemented prepayment review of Plaintiff's claims, and that Plaintiff submits identical claims for DME to other plans and programs and those claims are processed timely and without prepayment review. (ECF No. 3, Compl. ¶¶ 9-10.)

Defendants generally assert that there have been significant concerns regarding fraud, waste, and abuse among DME suppliers in recent years, and that Plaintiff was placed on prepayment review for certain claims due to payment

integrity concerns, including allegations of billing for services not ordered and misrepresentations of services and diagnoses. (ECF No. 10-3, Knox Aff. ¶¶ 9-10.) Defendants describe prepayment review as a process used to detect and prevent provider fraud, waste, and abuse, and they state that it is limited to determining whether the records submitted by the provider support the benefit claims billed by the provider. (*Id.* ¶ 11.)[1] Specifically, when a provider is placed on prepayment review, for each benefit claim the provider submits for review, a letter requesting records supporting the claims is automatically generated by the Defendant insurer. (*Id.* ¶ 12.) If the provider submits records and the review shows that the records support the benefit claims that were billed, then the claims are directed to UnitedHealthcare for processing for payment pursuant to the applicable benefit plan terms. (*Id.*) But, if no records are submitted in a timely manner, or if the records do

---

[1] The Court notes that prepayment review is not a novel concept unique to this case, or to these Defendants. Generally, "[a] provider on prepayment review is not paid for a submitted claim until a prepayment review analyst has reviewed the claim to verify its accuracy. In contrast, a provider not on prepayment review has a claim paid without it being reviewed by a prepayment review analyst." *Bader v. Wernert*, 178 F. Supp. 3d 703, 713 (N.D. Ind. 2016). *See also United States v. Lovett*, 764 F. App'x 450, 452 (6th Cir. 2019) ("If [Medicare] administrators suspect an issue with a provider, they can place the provider on 'prepayment review,' which means Medicare will stop the automatic payment of claims and instead review the documentation (e.g., patient records) prior to paying the claim.").

not support the claims billed, the claims are denied and an explanation of the denial is provided to the provider. (*Id.*)

Plaintiff contends that over 80% of the claims for which Plaintiff has responded to prepayment review and provided medical records have been determined to be appropriate and payable by Defendants. (ECF No. 8-1, Soblick Aff. ¶ 37.) Plaintiff further states that, starting in or about July 2022, Defendants began processing non-CGM related claims without prepayment review, but that Defendants continue to refuse to process CGM-related claims without prepayment review, and that many prior non-CGM and CGM claims remain unprocessed. (ECF No. 3, Compl. ¶¶ 106-08.)

Defendants contend, however, that Plaintiff has failed to submit any records on approximately 40% of the claims subject to prepayment review. (ECF No. 10-3, Knox Aff. ¶ 13.) As a result, those claims were denied for failure to submit records. (*Id.*) Defendants assert that if Plaintiff had submitted the requested records on those claims, those records would have been reviewed and the claims would have been processed in accordance with the findings and pursuant to the applicable plan terms. (*Id.*)

**B.     Procedural History**

On September 23, 2022, Plaintiff commenced this action in the Macomb County Circuit Court, seeking injunctive relief. Defendants timely removed this matter to this Court on October 7, 2022. (ECF No. 1, Notice of Removal.)[2]

On October 17, 2022, Plaintiff filed a "corrected" Complaint in this Court, alleging four claims against Defendants based on Defendants' prepayment review requirement of claims submitted by Plaintiff: (1) breach of contract; (2) implied contract; (3) declaratory judgment; and (4) injunctive relief. (ECF No. 3, Compl.)

Defendants filed an Answer on October 20, 2022. (ECF No. 5, Answer.)

On November 3, 2022, Plaintiff filed the instant Motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 8, Pl.'s Mot.) Plaintiff argues that Defendants have refused to process approximately 7,000 claims for items/services Plaintiff has supplied to Defendants' health plan beneficiaries,

---

[2] Defendants state that the same day this matter was removed to this Court, the Macomb County Circuit Court denied Plaintiff's motion for temporary restraining order, finding that Plaintiff failed to make a showing of irreparable harm. (ECF No. 10-4, State Court Order.) This, of course, is not binding on this Court. On October 11, 2022, this Court entered an Order Regarding Removal, requiring the parties to file with this Court all pleadings, pending motions, etc., and advising that this Court will not consider any unresolved motions pending in state court at the time of removal, unless they have been re-filed on this Court's docket. (ECF No. 2.)

because it is relying on a pretextual prepayment review and dilatory claims processing practice, causing irreparable injury to Plaintiff's business.

On November 23, 2022, Defendants filed their Response in opposition to Plaintiff's motion. Defendants argue that Plaintiff has failed to meet the standard required for preliminary injunctive relief, and that Plaintiff's motion therefore must be denied. (ECF No. 10, Defs.' Resp.)

Plaintiff filed a Reply on November 30, 2022 (ECF No. 11), and this Court held a hearing on Plaintiff's motion on January 5, 2023.

## II.  LEGAL STANDARD

Preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit. *See University of Texas v. Camenisch*, 451 U.S. 390 (1981). A plaintiff bears the burden of demonstrating entitlement to preliminary injunctive relief, *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000), and such relief will only be granted where "the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Whether to grant such relief is a matter within the discretion of the district court. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007).

8

When considering a motion for injunctive relief, the Court must balance the following four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief; (3) whether granting the preliminary injunctive relief would cause substantial harm to others; and (4) whether the public interest would be served by granting the preliminary injunctive relief. *Certified Restoration Dry Cleaning Network*, 511 F.3d at 542. "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet*, 305 F.3d at 573. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Medical Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

"[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion[.]" *Leary*, 228 F.3d at 739. A plaintiff must do more than just "create a jury issue," and must persuade the court that it has a likelihood of succeeding on the merits of its claims. *Id*. A plaintiff must further demonstrate that it is *likely* to suffer irreparable harm in the absence of an injunction. *See Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in

9

the absence of an injunction.") (emphasis in original) (internal citations omitted).

"The 'key word' in determining the extent of an injury sufficient to support the

award of injunctive relief is 'irreparable.' Mere injuries, however substantial, are not

enough. Rather, 'the harm alleged must be both certain and immediate, rather than

speculative or theoretical.'" *Hudson v. Caruso*, 748 F. Supp. 2d 721, 730 (W.D.

Mich. 2010) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v.*

*Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). "This is because the preliminary

injunction is an extraordinary remedy involving the exercise of a very far-reaching

power, which is to be applied only in [the] limited circumstances which clearly

demand it." *Leary*, 228 F.3d at 739 (internal quotation marks and citation omitted,

alteration in original).

### III.  ANALYSIS

Plaintiff contends that all four factors favor Plaintiff and demonstrate the need

for preliminary injunctive relief. Defendants respond that the four factors weigh

against Plaintiff's request for a temporary restraining order and preliminary

injunction, and that Plaintiff's motion therefore should be denied.

### A.    Strong Likelihood of Succeeding on the Merits

"To be entitled to injunctive relief, [Plaintiff] must first demonstrate that it is

likely to succeed on the merits" of its claims in this case. *Enchant Christmas Light*

10

*Maze & Market, Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020). "Although a party is not required to prove its case in full at a preliminary injunction hearing, a plaintiff 'must show more than a mere possibility of success.'" *York Risk Servs. Group v. Couture*, 787 F. App'x 301, 305 (6th Cir. 2019) (quoting *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

A party moving for a preliminary injunction typically: 1) identifies the claim or claims that it contends it has a substantial likelihood of prevailing on the merits; 2) sets forth the applicable law that shows what it must establish in order to prevail on that claim or claims; and 3) then discusses how it can do that based upon the evidence it has offered in support of its motion. But, as Defendants point out in their Response, Plaintiff has not done that here.

Plaintiff pleads four counts in its Complaint: (1) breach of contract; (2) implied contract; (3) declaratory judgment; and (4) injunction. (ECF No. 3, Compl.) Plaintiff's motion, however, lacks any discussion of the applicable law that governs any of those four asserted counts. This Court should not be required to, *sua sponte*, explore the merits of Plaintiff's claims, given that Plaintiff has failed to do so. This alone could be a sufficient basis for finding that Plaintiff has failed to establish a likelihood of success on the merits of the its pleaded claims in this case.

11

### 1.   The Michigan Prompt Pay Act, Mich. Comp. Laws § 500.2006

Instead of arguing in its motion that it has a substantial likelihood of success on its pleaded claims, Plaintiff argues only in its motion that it did not agree to prepayment review of submitted claims as a condition of payment, and that Defendants have "breached" the "prompt payment requirement" in Michigan's Prompt Pay Act, Mich. Comp. Laws § 500.2006(8)(a), "by refusing to timely process and either pay or deny [Plaintiff's] claims in good-faith." (ECF No. 8, Pl.'s Mot., PageID.332-33.)

Defendants argue in their Response brief that (1) the Michigan Prompt Pay Act is not one of Plaintiff's four counts in its Complaint, and (2) Plaintiff does not have a private right of action to enforce under the Michigan Prompt Pay Act. (ECF No. 10, Defs.' Resp.) The Court agrees.

The Court notes that Plaintiff does mention the Michigan Prompt Pay Act, MCL § 500.2006, several times in its Complaint, along with other statutes and regulations which Plaintiff contends obligates Defendants to process and pay claims submitted by providers. (See ECF No. 3, Compl. ¶¶ 73, 76, 156, 160-62.) However, as stated above, while Plaintiff pleads four claims against Defendants – breach of

contract, implied contract, declaratory judgment, and injunction – Plaintiff does not assert a claim for violation of the Michigan Prompt Pay Act. (See Compl.)

Moreover, even if Plaintiff did assert such a claim in its Complaint, that claim would necessarily fail because there is no private right to sue under the Michigan Prompt Pay Act. *See Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 826-27 (E.D. Mich. 2020) (holding that plaintiffs may not assert a private right to sue under the Michigan Prompt Pay Act for the full amounts of their billed claims or for penalty interest claims, and only state actors may sue under the Act).

Section 500.2006, the Michigan Prompt Pay Act, is part of the Michigan Uniform Trade Practices Act (UTPA), Mich. Comp. Laws § 500.2001 *et seq.*, which in turn makes up part of Michigan's Insurance Code. *See Emergency Dep't Physicians P.C.*, 507 F. Supp. 3d at 823. The Prompt Pay Act "creates processing and payment procedures that healthcare professionals must follow for health insurers to pay their claims," *id.*, and requires that "[a] clean claim must be paid within 45 days after receipt of the claim by the health plan. A clean claim that is not paid within 45 days bears simple interest at a rate of 12% per annum." Mich. Comp. Laws §

13

500.2006(8)(a); *see also id.* § 500.2006(14)(a) (defining a "clean claim").[3] The United States district court in *Emergency Department Physicians P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814 (E.D. Mich. 2020) (Murphy III, J.), analyzed the Michigan Prompt Pay Act, and noted that "[g]enerally, 'a violation of the [UTPA] … does not give rise to a private cause of action.'" *Id.* at 825-27 (citing *Isaholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9, 17 (1994)). The court found that the plaintiff in that case cannot maintain a claim for "damages in the amount of their billed charges" because (1) the Michigan Legislature did not create an express private right to sue under the Act, (2) Michigan state courts have routinely failed to imply a private right to sue under the Act, and (3) Michigan state courts recognized that only state actors may sue under the Insurance Code. *Id.* at 826. The court further found that there is no private right to sue for the twelve percent penalty interest on untimely paid claims under the Prompt Pay Act. *Id.* at 827.[4]

---

[3] Defendants note that the Prompt Pay Act applies to "clean claims," which requires, among other things, "additional documentation based on services rendered as reasonably required by the health plan." (ECF No. 10, Defs.' Resp., PageID.494 fn.2, citing Mich. Comp. Laws § 500.2006(14)(a).) Defendants assert that Plaintiff has routinely failed to provide this requested information, and thus has not demonstrated that any disputed claims are "clean." (*Id.*)

[4] In its Reply brief, Plaintiff argues that Defendants "misconstrue[]" the *Emergency Department Physicians* decision as limited to a private right of action for billing for emergency services. (ECF No. 11, Pl.'s Reply, PageID.536-37.) However, it is Plaintiff that misconstrues that decision. While the *Emergency Department*

Accordingly, the Court finds that Plaintiff failed to plead a claim for breach of the Michigan Prompt Pay Act, and that even if it did, such a claim would fail because there is no private right to sue for violation of the Act.

In addition, examining the four counts Plaintiff does assert in its Complaint, the Court finds that Plaintiff fails to demonstrate a substantial likelihood of success on the merits of the asserted claims in this case.

_____

*Physicians* decision did address the Surprise Medical Billing Act, along with the Prompt Pay Act, it found that the Michigan Legislature "necessarily intended the two statutes to complement one another" such that "the Surprise Medical Billing Act regulates *how much* an insurer must pay a healthcare provider while the Prompt Pay Act regulates *how quickly* an insurer must pay a healthcare provider." *Emergency Dep't Physicians*, 507 F. Supp. 3d at 825 (emphases in original) (finding that the Michigan Legislature did not intend the Surprise Medical Billing Act to regulate the Prompt Pay Act's scheme).The court then concluded that "based on basic statutory interpretation, the Prompt Pay Act's language creates no private right to sue." *Id.*

The court also stated, "[a]t the least, the Prompt Pay Act's plain text does not preclude a private enforcement right through, for example, a breach of contract claim." *Id.* (citing § 500.2006(12) ("This subsection does not prohibit a health professional … from seeking court action.")). Thus, if Plaintiff and Defendants entered a contract that required prompt payment of claims as set forth in the Prompt Payment Act, then presumably Plaintiff could enforce that right through a breach of contract action. However, as explained *infra*, Plaintiff concedes that it does not have a contract with any of the Defendants, and the Court finds that Plaintiff here fails to establish a substantial likelihood of success on its breach of contract and implied contract claims.

### 2.      Breach of contract (Count I)

As discussed above, Plaintiff did not address its breach of contract claim in its opening motion, much less demonstrate a substantial likelihood of success on that claim, and the Court therefore could find that Plaintiff has waived such an argument.

But considering this claim, to prove a breach of contract under Michigan law, Plaintiff must demonstrate that there was a contract between the parties, requiring the performance of specific actions, one party breached the contract, and the breach caused injury to the other party. *Bank of Am., N.A. v. First Am. Title Ins.*, 499 Mich. 74, 100 (2016); *Emergency Dep't Physicians*, 507 F. Supp. 3d at 827-28.

As Defendants correctly state in their Response brief, Plaintiff's breach of contract claim fails for the reason that Plaintiff has not provided any evidence of a contract between Plaintiff and any Defendant. (ECF No. 10, Defs.' Resp., PageID.494-95.) In fact, Plaintiff's affiant, David Soblick, affirmatively states that "Specialty Medical is not an in-network provider with Defendants' health plans and health benefit programs ***as Specialty Medical has not signed a participating provider agreement with Defendants***." (ECF No. 8-1, Soblick Aff. ¶ 9 (emphasis added).) This undisputed fact is dispositive of Plaintiff's breach of contract claim because claims for breach of contract, by their nature, require the existence of an underlying contract. *See Bank of Am., N.A.*, 499 Mich. at 100; *see also Gason v. Dow*

16

*Corning Corp.*, 674 F. App'x 551, 559 (6th Cir. 2017) ("A breach-of-contract claim requires proof that a contract existed.").

In its Reply brief, Plaintiff does not contend that it has entered into any contract with Defendants. Plaintiff instead asserts, for the very first time, that it has a right to payment for healthcare items/services provided to Defendants' beneficiaries because Plaintiff is a third-party beneficiary of the patients' health insurance/coverage contract with Defendants, citing Mich. Comp. Laws § 600.1405, which governs Michigan's third-party beneficiary law. (ECF No. 11, Pl.'s Reply, PageID.533-34.)[5] Plaintiff does not assert this claim – that it is a third-party

---

[5] In relevant part, Mich. Comp. Laws § 600.1405 states:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

"Importantly, the plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has 'undertaken to give or to do or refrain from doing something *directly* to or for said person.'" *Brunsell v. City of Zeeland*, 467 Mich. 293, 296 (2002) (citing MCL § 600.1405(1)) (emphasis in original). "By using the modifier 'directly,' the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party

beneficiary of Defendants' health benefit plans with their insureds – or Mich. Comp.

Laws § 600.1405, in its Complaint, or mention it in its opening motion and brief,

and therefore has waived this claim. Issues raised for the first time in a reply brief

are waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e

have found issues to be waived when they are raised for the first time in motions

requesting reconsideration or in replies to responses"); *Appalachian Railcar Servs.,*

*Inc. v. Boatright Enterprises, Inc.*, 602 F. Supp. 2d 829, 872 n. 24 (W.D. Mich. 2008)

("Ordinarily, this court will not consider arguments raised for the first time in a reply

or surreply brief.").

Plaintiff does allege in its Complaint that it "confirmed with Defendants

whether Defendants would require prior authorization or other prior approval" prior

to Plaintiff furnishing DME to Defendants' beneficiaries, and that Plaintiff obtained

prior authorization or approval when necessary, and thus "reasonably expected to be

paid by Defendant." (ECF No. 3, Compl. ¶¶ 142-46.) However, Plaintiff's affiant

concedes that, even if prior authorization is granted,

> [t]he prior authorization is not a guarantee that the insurer will pay for
> the services authorized as there are a number of reasons why payment

is able to enforce the contract." *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422,
428 (2003) (internal apostrophes added).

may still be denied under the terms of the health plan, including a lack of medical necessity for the item, a failure to obtain a fiscal order for the services signed by a licensed health care practitioner, or the delivery of items in excess of the limits of the prior authorization or plan coverage limits.

(ECF No. 8-1, Soblick Aff. ¶ 22.)

Further, pursuant to Mich. Comp. Laws § 600.1405, "only *intended* third-party beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405." *Koenig v. City of South Haven*, 460 Mich. 667, 679 (1999) (emphasis added). An incidental beneficiary has no rights under a contract. *Id.* In other words, a third party cannot maintain a breach of contract action simply because it would receive a benefit from the contract's performance or would be injured by its breach. *Thornberry v. Grand Trunk W. R.R. Inc.*, 776 F. Supp. 2d 453, 459 (E.D. Mich. 2011). "Third-party beneficiary status requires an express promise to act to the benefit of the third party / where no such promise exists, that third party cannot maintain an action for breach of the contract." *Dynamic Constr. Co. v. Barton Malow Co.*, 214 Mich. App. 425, 428 (1996).

At best, Plaintiff may be an incidental beneficiary to Defendants' health plans with its plan beneficiaries. *See Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191, 271 n.39 (2017) (the determination of whether "healthcare providers are incidental rather than intended beneficiaries of a contract between the

19

insured and the insurer" rests "on the specific terms of the contract between the relevant parties."); *Michigan Head & Spine Inst., PC v. Essurance Prop. & Cas. Ins. Co.*, No. 340807, 2018 WL 4579704, at *2-3 (Mich. Ct. App. Sept. 18, 2018) (denying third-party beneficiary claim because "plaintiff has not identified any language in the no-fault insurance policies that directly refers to plaintiff or that sufficiently describes a class of which plaintiff is a member"). As Defendants explain in their Response brief, whether any item is payable is ultimately determined on an insured-by-insured basis, and subject to considerations of what may or may not be payable under any particular benefit plan between Defendants and their insureds. (ECF No. 10, Defs.' Resp., PageID.495.) Defendants correctly state that any references to, or analysis of, such underlying health benefit plans is "[t]ellingly absent from" Plaintiff's motion. (*Id.* (stating that "it is impossible to determine if any claim on which Specialty Medical seeks payment is actually payable without an analysis of the underlying benefit plans applicable to each of the underlying insureds and members").)

Plaintiff here has not provided any evidence of a contract between Plaintiff and any Defendant, it has not pleaded that it is an intended third-party beneficiary of the contracts between Defendants and their insureds, and has not made any showing that it is an intended beneficiary of the underlying health plans, and thus the Court

finds that Plaintiff has failed to demonstrate a substantial likelihood of success on its breach of contract claim, or a third-party beneficiary claim, even if such a claim had been pleaded.

### 3. Implied contract (Count II)

As with the breach of contract claim above, Plaintiff did not address its implied contract claim in its opening motion, much less demonstrate a substantial likelihood of success on that claim, and the Court therefore could find that Plaintiff has waived such an argument and thus fails to establish a substantial likelihood of success on this claim.

But considering this claim, Defendants argue in their Response brief that an implied contract claim fails because Plaintiff has not identified what the terms of this "contract" with Defendants are or how they were breached. (ECF No. 10, Defs.' Resp., PageID.497-98.) Defendants contend that Plaintiff's claim is not "entirely clear," but whether Plaintiff proceeds under an unjust enrichment theory, or a promissory estoppel theory, Plaintiff fails to state a claim because, even taking as true Plaintiff's claim that it sought preauthorization for various procedures and items, and relied on the same, Plaintiff concedes that a "prior authorization is not a guarantee that the insurer will pay for the services authorized as there are a number of reasons why payment may still be denied under the terms of the health plan[.]"

(*Id.*, citing Soblick Aff. ¶ 22.) Defendants assert that Plaintiff has not established that any single claim should be paid, let alone a substantial likelihood that $1.5 million worth of them should be paid. (*Id.*)

Looking at the Complaint, Plaintiff pleads in Count II that Defendants' past conduct reasonably led Plaintiff to believe that payment would be made for the DME Plaintiff provided to Defendants' plan beneficiaries. (ECF No. 3, Compl. ¶¶ 168-76.) Plaintiff pleads that Defendants will be unjustly enriched if they are not required to reimburse Plaintiff for such DME because they will have "procured DME for their plan beneficiaries without paying therefor" and that "equity and good conscience" do not permit Defendants to "retain the benefit of [Plaintiff's] provision of DME to Defendants' plan beneficiaries while avoiding payment for the Overdue Claims for DME." (*Id.* ¶ 177-78.)

Plaintiff argues, for the first time in its Reply brief, that "Plaintiff and Defendants have directly established implied contracts." (ECF No. 11, Pl.'s Reply, PageID.534.) As stated above, arguments raised for the first time in reply briefs are generally waived. *Scottsdale Ins. Co.*, 513 F.3d at 553. Plaintiff argues in its Reply brief that Defendants "cherry-pick" one line from Mr. Soblick's affidavit to suggest that a "prior authorization" is not, by itself, a guarantee of payment. (ECF No. 11, Pl.'s Reply, PageID.535.) Plaintiff states that it has provided and been paid by

Defendants for DME for many years, since at least 2016, and that Plaintiff came to "naturally anticipate" compensation for DME it supplied to Defendants' beneficiaries, and Defendants expected to pay Plaintiff, on a prompt basis, for such DME. (*Id.*) Plaintiff contends that "[o]ver years, the parties in this case established a clear understanding that Specialty Medical would be promptly paid for claims[,]" and therefore "there is a contract implied by law and that contract required/requires prompt payment." (*Id.*)

However, as Defendants assert, the question of whether any item is payable is ultimately determined on an insured-by-insured basis, and is subject to consideration of what may or may not be payable under any particular benefit plan. (ECF No. 10, Defs.' Resp., PageID.495, citing Soblick Aff. ¶ 22.) And, "whether a particular service or product is covered under the terms of any benefit plan depends on numerous factors, including, among other things, the terms of that plan, the member's eligibility status, and any co-pays, out-of-pocket maximums, and deductibles." (ECF No. 10-3, Knox Aff. ¶ 6.) Because the question of whether any particular item or service is payable is ultimately determined on an insured-by-insured basis, subject to considerations of what may or may not be payable under any particular benefit plan, the Court will not find an implied contract broadly requiring Defendants to pay Plaintiff, on a prompt basis, for all DME provided to

various insureds, pursuant to the terms of varying benefit plans, based solely on the fact that Defendants have, in the past, paid unrelated claims for DME to presumably other insureds, covered by different benefit plans.

The Court thus finds that Plaintiff fails to demonstrate a substantial likelihood of success on the merits of its implied contract claim.

### 4. Declaratory judgment (Count III) and Injunction (Count IV)

Defendants argue that Plaintiff's Declaratory Judgment claim (Count III) is duplicative of its contract claims, and necessarily fails with them, and that the Declaratory Judgment claim and the Injunction claim (Count IV) are remedies, and not independent causes of action. (ECF No. 10, Defs.' Resp., PageID.498-99.) The Court agrees. *See Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (explaining that the Declaratory Judgment Act, 28, U.S.C. § 2201, does not provide an independent cause of action; it is a remedy, not an independent claim); *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) ("Injunctive relief is not a cause of action, it is a remedy") (internal quotation marks and citation omitted); *Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016) (Lawson, J.) (stating that plaintiff's claims for declaratory relief and preliminary injunction "do not state

actual claims for relief, because declaratory and injunctive relief are remedies, not causes of action") (citations omitted).

Plaintiff fails to address these two Counts in its opening Motion or in it Reply brief, and thus waives any argument that it has a substantial likelihood of success on the merits of these counts.

Accordingly, the Court finds that Plaintiff fails to establish a substantial likelihood of success on the merits of Counts I through IV of its Complaint, and that this factor weighs in favor of denying Plaintiff's motion for temporary restraining order and preliminary injunction. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales*, 225 F.3d at 625.

### B. Irreparable Harm Absent Injunctive Relief

To satisfy the second factor, Plaintiff must "demonstrate that irreparable injury is likely in the absence of an injunction," *Winter*, 555 U.S. at 22, and that the injury is "both certain and immediate, rather than speculative or theoretical," *Griepentrog*, 945 F.2d at 154. "To be granted an injunction, the plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or the existence of an actual threat of such injury." *Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 969 (6th Cir. 2002) (quoting *Robert W. Clark, M.D., Inc. v. Mt. Carmel*

25

*Health*, 124 Ohio App.3d 308, 315 (1997)). Finally, this element is significant as "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)); *see also Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734, 771 (E.D. Mich. 2003) ("A finding of irreparable harm is 'the single most important prerequisite that the Court must examine when ruling upon a motion for a preliminary injunction.'") (quoting *MetroBanc v. Fed. Home Loan Bank Bd.*, 666 F. Supp. 981, 984 (E.D. Mich. 1987)).

Plaintiff here argues that it will be irreparably harmed in two ways if it is not awarded the requested injunctive relief: (1) loss of a business revenue or insolvency; and (2) loss of goodwill because of a loss of customers. (ECF No. 8, Pl.'s Mot., PageID.333-35.) Plaintiff contends that it "is operating at a loss specifically because of Defendants' refusal to process and render payment for valid claims in good-faith." (*Id.*) Plaintiff states that it had a quarterly loss of $654,342.87 in the third quarter of 2022, that Defendants are refusing to process approximately $1,513,009.40 in claims, and that the costs of providing DME to Defendants' insureds exceeds $750,000, and thus the refusal of Defendants to process claims in good faith is the difference between Plaintiff's solvency and insolvency. (*Id.*, citing ECF No. 8-1,

Soblick Aff. ¶¶ 56, 66; ECF No. 8-4, Supplemental Affidavit of David Soblick, ¶¶ 12-13.) Plaintiff further contends that it would lose goodwill if it simply stopped serving Defendants' beneficiaries, who represent about half of Plaintiff's patient-base. (*Id.*)

Defendants argue in their Response brief that Plaintiff has not demonstrated that it will suffer irreparable harm absent preliminary injunctive relief. (ECF No. 10, Defs.' Resp. PageID.500-01.) Defendants contend that Plaintiff concedes that it has not received any guarantee or confirmation that any contested amount at issue here is actually payable under any underlying policy. (*Id.*) Defendants further correctly point out that Plaintiff cannot claim that it is at risk of irreparable harm when it has the opportunity to submit the information requested by Defendants, but has chosen not to do so for the claims at issue. (*Id.*) Defendants assert that Plaintiff's purported harm is entirely monetary and thus not irreparable. (*Id.*)

Plaintiff does not address the irreparable injury argument in its Reply brief. (ECF No. 11, Pl.'s Reply.) However, Plaintiff does assert that it is "not requesting that all of the at-issue claims be paid at this time" and instead "requests that Defendants be compelled to make a good-faith determination as to whether each of the at-issue claims is approved or denied based on the submissions that Plaintiff has

27

already made," and that Defendants then "should make prompt payment" for all the approved claims. (*Id.* PageID.532.)

The Court finds that Plaintiff has failed to demonstrate by clear and convincing evidence that it will suffer irreparable injury if it is not granted the requested emergency injunctive relief. Plaintiff's alleged harms appear to be primarily compensable in money damages. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (citation omitted). Moreover, Plaintiff concedes that it has not received any guarantee that any contested claim is actually payable, and Plaintiff states in its Reply that it is not requesting payment of all claims at this time. Therefore, the requested injunctive relief would not necessarily address Plaintiff's claimed insolvency if the disputed claims are not paid now.

Further, as Plaintiff has failed to establish a substantial likelihood of success on the merits on its asserted claims, Plaintiff fails to establish a basis to require Defendants to deviate from their business practice of placing Plaintiff on prepayment review, which Defendants assert was in response to "significant concerns regarding

fraud, waste and abuse among DME suppliers in recent years." It is also important to note that Plaintiff is not seeking injunctive relief to maintain the status quo. Rather, Plaintiff is in essence is asking the Court to grant, by injunction, the very benefits which constitute the subject matter of this lawsuit, prior to a determination on the merits of Plaintiff's claims. *See Camenisch*, 451 U.S. 390 (noting that preliminary injunctions are extraordinary remedies designed to protect the status quo pending final resolution of a lawsuit); *Six Clinics Holding Corp.*, 119 F.3d at 400 ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

Thus, the Court finds that Plaintiff has failed to meet its burden to show actual *irreparable* harm sufficient to entitle it to the extraordinary relief sought here, and "[s]tanding alone, this balances strongly against the issuance of a preliminary injunction." *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 609 (E.D. Mich. 2015) (citation omitted).

### C.     Harm to Others and Public Interest

In the third and fourth factors, the Court must consider whether issuing the injunction would result in substantial harm to others, and "whether the public interest would be served by the issuance of the injunction." *Certified Restoration*, 511 F.3d at 550-51. Generally, the harm-to-others prong is evaluated "in terms of the balance

of the hardships between the parties." *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994).

Plaintiff argues that Defendants will not suffer any harm because Plaintiff "is not currently requesting that Defendants be ordered to pay claims that Defendants continue to dispute following a good-faith review," but "merely requests that Defendants be ordered to expeditiously conduct a good-faith review and pay those claims for which there is no dispute," and that Defendants will not be harmed as much as Plaintiff due to the relative size of each business. (ECF No. 8, Pl.'s Mot., PageID.335.) Plaintiff further contends that the public will be served by the requested injunctive relief because they otherwise may have to find other sources of DME. (*Id.* PageID.336-37.)

Defendants argue in Response that Plaintiff's "solution" – forcing Defendants to pay bills submitted by Plaintiff before Defendants are given what they need to determine if the claims are payable – places Defendants at risk of paying fraudulent claims that they may not be able to recover. (ECF No. 10, Defs.' Resp., PageID.502.) Defendants further point out that Plaintiff is not necessarily the only source of DME for Defendants' insureds, and thus the requested injunctive relief does not serve the public interest.

The Court finds that these last two factors do not weigh in favor of granting Plaintiff's requested injunctive relief. Defendants should not be forced to adjudicate and possibly pay claims without receiving reasonably requested information from Plaintiff. According to the parties' briefing, Plaintiff did provide additional requested information on 60% of the submitted claims, and it has been paid for 80% of those claims, but Plaintiff simply has not provided the requested information for 40% of the submitted claims. Defendants should not be forced to adjudicate those remaining claims without the requested information.[6] And, the Court declines to find

---

[6] Plaintiff contends that the requested information is overly burdensome, and in large part wholly irrelevant to the claims at issue. Plaintiff attaches as an exhibit to its Reply brief a "set of exemplar prepayment review requests from Defendants." (ECF No. 11-2.) However, a review of those letter requests shows that the request is for "complete medical records as outlined below, *based on your specialty or where the service(s) was given*." (*E.g., id.* PageID.542.) The letter then lists several categories of records requested based on the services provided, including, *inter alia*, for Plaintiff's specialty – "Durable Medical Equipment" – requiring, for that specialty:

- Initial set-up/delivery documentation or shipping documentation for mail order
- Physician order/Certificate of Medical Necessity (CMN) for original date of service and renewal orders/CMN covering through date of service requested
- Supporting physician notes for services requested
- Proof of use, such as ongoing supporting supply deliveries (oxygen refills, oxygen tubing, CPAP supply deliveries, etc.

(*Id.* PageID.543.) This request for documentation, based on Plaintiff's "specialty or where the service(s) was given" of DME does not appear to be overly burdensome.

31

that the public interest would be served by granting the requested injunctive relief, as Plaintiff is not the only source for DME for Defendants' insureds.

In sum, when balancing the four factors, the Court does not find that the present case demands the extraordinary remedy of a temporary restraining order and/or preliminary injunction. Importantly, Plaintiff has failed to meet its burden of demonstrating that it is likely to succeed on the merits of its asserted claims, or that it is likely to suffer immediate, irreparable harm absent injunctive relief. Plaintiff's motion therefore will be denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 8).


IT IS SO ORDERED.

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: January 10, 2023

32